Keasbey's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*John Russell*, for accountant.

*Rodney T. Bonsall* and *Benjamin O. Frick*, for executor.

*Belmont, Benedetto & Rubin*, for guardian and trustee ad litem.

KLEIN, J., December 20, 1940.—By deed of trust dated January 16, 1929, Henry G. Keasbey transferred and assigned certain assets to Fidelity-Philadelphia Trust Company in trust upon terms the details of which are not material to this opinion. An account was filed by the trustee under this deed and adjudicated by Bolger, J., of this court. Exceptions to this adjudication are now before the court.

The settlor died in 1932, a resident of Montgomery County, leaving a will by which he appointed the same company (Fidelity-Philadelphia Trust Company) executor and trustee. An account, filed by the testamentary trustee, is now pending in the Orphans' Court of Montgomery County.

A study of the record in the present case discloses that the settlor in 1929 acquired the bond of Dr. Richard V. Mattison, a former business associate, in the sum of $3,-150,000, secured by all the outstanding shares of stock of Keasbey & Mattison Company, a corporation. The bond provided for payment in seven annual instalments, the first six being in the sum of $500,000 each and the last in the sum of $150,000. The bond further provided for the

payment of interest at the rate of six percent per annum on all unpaid instalments of principal.

Keasbey retained for himself title to a $1,150,000 share of the principal of the bond consisting of two of the instalments of $500,000 and the final instalment of $150,-000. He transferred to the trustee under the deed of trust all his interest in the remaining four instalments, aggregating $2,000,000, plus "all the interest required to be paid by the terms of the said bond on the entire principal sum of $3,150,000."

Mattison paid the instalment due in 1930 to Keasbey and the instalment due in 1931 plus interest to the trustee. He thereupon became insolvent and made no further payments of principal or interest. Thus at the time of Mattison's default $650,000 was owing Keasbey, and $1,-500,000 plus all interest due on the entire $2,150,000 to the trustee under the deed of trust.

Thereupon extensive and involved negotiations were undertaken to unravel Mattison's affairs. Keasbey & Mattison Company was reorganized. In return for the surrender of Mattison's bond and the collateral, Fidelity-Philadelphia Trust Company received 6,655 shares of the stock of the reorganized company. Of these shares 2,012 were allocated to the testamentary trust and the balance of 4,643 shares to the trust under the deed. This allocation was made on the basis of the principal claims of $650,000 and $1,500,000, respectively. Apparently no consideration was given by the trustees to the fact that the trust estate under the deed might be entitled to an additional portion of the stock by reason of the assignment to it of all the interest payable on the entire obligation of Mattison.

As a further part of the general plan of reorganization, Mattison transferred all his personal assets to a newly-formed corporation, Mattison's Estate, Inc. One thousand four hundred and sixty-seven shares of the stock of this company were given to Fidelity-Philadelphia Trust Company in its two capacities as trustee. This

stock was similarly divided between the two trusts on the basis of the principal claims without allowing any portion thereof for the interest assigned to the trust under the deed.

At the audit several intricate problems in apportionment were submitted to the auditing judge, which he disposed of in a carefully-considered adjudication. However, in our opinion, before any of the conflicting contentions between the life tenants and remaindermen under the inter vivos trust can be determined, it is necessary for us to make certain that the proceeds of the salvage operations were properly divided between the two trusts. If the trustee who is accounting before us has failed to procure for this trust all the proceeds of the salvage operations to which it was legally entitled, it follows as a matter of course that the beneficiaries are entitled to redress.

If we were all in agreement with the auditing judge that the division made between the two trusts was proper, our problem would be simple. However, we have considerable doubt concerning the accountant's action in ignoring the right of the inter vivos trust to apportionment with respect to "interest" on the entire obligation and in accepting the division solely on the basis of the principal claims.

If the division as made was incorrect, it follows that the testamentary trust received more than it was legally entitled to receive. There is no doubt in our minds that we have full authority to surcharge the accountant for any excess improperly paid to the other trust. But it is also clear that we are without power to direct the testamentary trustee to turn over any of the assets in the testamentary trust to the trust under the deed.

As a matter of procedure, therefore, it seems unwise and impractical to consider surcharging a fiduciary for failure to prosecute a legal claim, when proceedings involving the claim itself are pending before a court of competent jurisdiction which can adjudicate all phases of the question in dispute.

Since the excess, or overpayment, if any, is in the testamentary trust, for which an account is presently pending in Montgomery County, a majority of the court is of opinion that we should suspend confirmation of the adjudication and direct the trustee of the trust inter vivos to present a claim against the testamentary trustee for the alleged excess or overpayment. Accordingly, the exceptions are dismissed pro forma, and the record is recommitted to the auditing judge to await the termination of the proceedings in Montgomery County relating to said claim.

Bolger, J., dissents.